NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1765
_____

MICHAEL GERHART,
Appellant

v.

EXELON CORPORATION
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 10-cv-00425)
District Judge: Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2012
_____

Before: FISHER, GREENAWAY, JR., and ALDISERT, *Circuit Judges.*

(Opinion Filed:  February 6, 2012)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Michael Gerhart ("Gerhart") brought suit against his former employer, Exelon

Corporation ("Exelon"), in the Court of Common Pleas of Lehigh County, Pennsylvania,

1

alleging claims under Title VII and the Pennsylvania Human Rights Act, as well as intentional interference with prospective contractual relations. The case was removed to the Eastern District of Pennsylvania. Shortly thereafter, Exelon filed a motion for summary judgment. The District Court granted the motion on the ground that Gerhart had waived his claims in signed agreements with Exelon.

Since no substantial question is presented by Gerhart's appeal, we will affirm.

## I. BACKGROUND

We write primarily for the benefit of the parties and recount only the essential facts.

Gerhart's employment at Exelon's Limerick, Pennsylvania nuclear power plant commenced in 1996. In 2003, he sought and was granted unescorted access to the plant, in a process similar to obtaining security clearance. As part of that process, he signed a "PADS Consent Form"[1] with which he agreed that Exelon could "obtain, retain and transfer information necessary to determine whether to grant [him] unescorted access." (App. 41.) The Form specifically noted that the Nuclear Regulatory Commission ("NRC") requires that "this information be used in determining that an individual is trustworthy, reliable, and fit-for-duty prior to granting and while maintaining unescorted access." (*Id.*) It also released Exelon and its agents from "any and all liability based on

---

[1] PADS is the Personnel Access Data System, a database used by the commercial nuclear power industry "to share information necessary to process applications of workers for unescorted access to nuclear power plant protected areas." (App. 41.)

their authorized receipt, disclosure, or use of the information obtained pursuant to this Consent." (*Id.*)

In April 2007, Gerhart was interviewed by Exelon's security manager as a witness to an alleged act of sexual harassment that had taken place in a locker room at the plant. After the interview, Gerhart left a telephone message for the alleged victim. When confronted by the security manager about the inappropriateness of this contact, Gerhart "clarif[ied]" his earlier testimony. (*Id.* at 17.) Exelon determined that Gerhart had provided false information during this internal investigation and, as a result, it denied him unescorted access to the nuclear power plant based on concerns about his "trustworthiness and reliability." (*Id.* at 43.) Gerhart appealed this decision, but the appeals were denied. Although a peer review process determined that he had not been lying, his unescorted access was not restored. Without unescorted access, Gerhart could not perform his job duties, and he was terminated on November 20, 2007.

As part of the termination process, Gerhart signed a Waiver and Release drafted by Exelon in exchange for receiving thirty-three weeks of severance pay and other severance benefits. With that document, Gerhart agreed that "[i]n exchange for the optional severance benefits to be provided . . . I knowingly and voluntarily agree to this waiver and release of claims." (*Id.* at 44.) Included were "claims of whatever nature that I now have or that I may ever have against the Released Parties up until the date I sign this Waiver and Release." (*Id.*) The release provided examples of waived claims and explicitly included claims under Title VII of the Civil Rights Act of 1964 and claims of

3

discrimination in employment, retaliation, wrongful discharge, and "any other common law tort or statutory claims." (*Id.* at 44-45.)

Gerhart applied for employment with a number of other nuclear energy companies. However, the record showing that Gerhart's unescorted access had been rescinded by Exelon remained in the PADS database, accessible to other NRC-regulated entities. Gerhart was selected for at least two other positions, but these prospective employers noted that record and opted not to hire him.

Gerhart initiated this action against Exelon on August 14, 2008, by filing a complaint with the Pennsylvania Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). After receiving a right-to-sue letter from the EEOC, Gerhart filed suit in Pennsylvania state court. He later amended the complaint, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, as well as a tort claim for intentional interference with prospective contractual relations. (App. 21). He alleges that Exelon's failure to rescind the denial of unescorted access constitutes an act of retaliation subsequent to his signing of the Waiver and Release. The suit was removed to the United States District Court for the Eastern District of Pennsylvania.

Exelon moved for summary judgment, arguing that Gerhart had released Exelon from his claims with both the PADS Consent Form and the Waiver and Release he signed in order to obtain his severance package. It also argued that a number of Gerhart's claims were untimely and that the District Court lacked jurisdiction to consider the denial of

4

unescorted access because nuclear power plant access is within the exclusive purview of the NRC.

The District Court granted Exelon's motion and entered summary judgment in its favor. In its memorandum opinion, the District Court agreed that Gerhart had waived his claims by signing both waiver documents. It noted that Gerhart had not raised any issues concerning the validity of the Waiver and Release and it rejected his argument that Exelon's refusal to rescind the denial of unescorted access constitutes a post-termination action about which he had not waived his claims. The District Court also noted that, since Gerhart had filed no response to Exelon's Rule 56(c) statement of undisputed facts, it would consider those facts to be undisputed. Gerhart timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction over the appeal from the final orders of the District Court pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of summary judgment. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the

5

moving party is entitled to judgment as a matter of law." *Id.* at 216 (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc))).[2]

## III.  ANALYSIS

Gerhart signed a Waiver and Release that expressly waived any "claims of whatever nature that [he] now ha[s] or that [he] may ever have against the [Exelon] up until the date [he] sign[ed] this Waiver and Release." (App. at 44.) The District Court correctly noted that we hold such waivers to be valid so long as they were entered into knowingly and voluntarily. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). Since Gerhart did not contest that he acted knowingly and voluntarily when he signed the waiver, the District Court properly found that he had waived all the claims at issue in this lawsuit.[3]

Gerhart presents to this Court virtually no argument challenging this conclusion. He argues only that, because Exelon's peer review committee found that Gerhart had not been lying, Gerhart assumed when he signed the Release and Waiver that the denial of

---

[2]  Fed. R. Civ. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

[3] Gerhart argues to this Court that the District Court erred in granting summary judgment before pretrial discovery had been taken. Gerhart did not, however, file an affidavit in the District Court laying out his need for more time to conduct discovery, as required by Fed R. Civ. P. 56(d). Accordingly, he has waived his objection to his alleged inability to obtain necessary discovery. *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511 n.3 (3d Cir. 1994).

unrestricted access would not negatively impact his future employment prospects. Assuming that this contention is true, it does not affect the reality that he nonetheless waived these claims with the Release and Waiver.

Further, even if we were to find that Exelon's maintenance of the record of denying Gerhart unrestricted access somehow constituted an action taken by Exelon subsequent to Gerhart's signing of the Release and Waiver, his claims would still be barred by the PADS Consent form. That document released Exelon from "any and all liability based on [its] authorized receipt, disclosure, or use of the information obtained pursuant to this Consent," information that includes the "[d]ate of any denial of access and the company holding the relevant information." (App. at 41.) Accordingly, Gerhart waived his right to bring this lawsuit with two different documents.

## IV. CONCLUSION

In sum, Gerhart's appeal presents no substantial question. Accordingly, we will affirm the judgment of the District Court.

7